E-FILED
Tuesday, 31 May, 2005  03:59:00 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | No. 04-30063 |
| CARLOS CORTEZ-MENDEZ, ) | |
| Defendant. ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

NOW COMES the Defendant, CARLOS CORTEZ-MENDEZ  (hereinafter "CORTEZ") by his attorney Assistant Federal Defender Douglas J. Beevers, and hereby files his sentencing memorandum.  He has no objections to the pre-sentence report.

**I..  Time Served for Violating State Parole.**

According to U.S.S.G. §5G1.3(c) and Application note 3(C) where a defendant commits a new federal offense while on state parole, the Sentencing Commission permits concurrent sentencing but "recommends" that the federal sentence be served consecutive to the state court's sentence for the revocation of parole.  Although the Commission's recommendation is reasonable in most cases, in CORTEZ's case the recommendation would result in an unreasonably long period of total imprisonment for the defendant's second crime in his life.

CORTEZ entered the United States while on state parole, but his only violation of his parole was his commission of the federal offense of re-entry after deportation.  Although he technically would have been in violation of his parole for not reporting to probation, the Fifth Amendment prevents CORTEZ from being punished for failing to incriminate himself by reporting that he has illegally re-entered.  *See Haynes v. United States*, 390 U.S. 85, 97, 19 L. Ed. 2d 923, 933, 88 S. Ct. 722,__ (1968)(holding that defendant who illegally possessed a machine gun could not be punished separately for

illegal possession and for failing to register the illegal machine gun).  CORTEZ can be punished for violating his parole by committing a new federal offense.  CORTEZ contends that the 11 months which he has served in state custody was punishment for the underlying conduct of entering the United States illegally after being deported.  Since this 11 months state court sentence is part of the total punishment he will receive for the federal immigration offense, this Court should not follow the Sentencing Commission's recommendation for consecutive sentencing.

**II. Three Month Delay in Bringing to Federal Court**.

Defendant was found by immigration on September 3, 2004, and was not brought to federal court for his initial appearance until December 7, 2004.  Courts have held that unreasonable delay can support a downward departure even where the delay is innocent, since a federal court cannot give credit for time served in state custody.  *United States v. Barrera-Saucedo*, 385 F.3d 533, 537(5th Cir. 2004); *See also United States v. Los Santos*, 283 F.3d 422, 428-29 (2d Cir. 2002); *United States v. Sanchez-Rodriquez*, 161 F.3d 556, 564 (9th Cir. 1998) (en banc); *See United States v. Saldana*, 109 F.3d 100, 104-05 (1st Cir. 1997).  Based on the logic of these cases, this Court should take into account the full 11 months served in state custody for the underlying conduct.

**III.   Unwarranted Disparity Created By the Geographic Limits on Fast Track Programs.**

As part of a comparative study of so-called "Fast-Track" programs in several jurisdictions in the United States, members of the Federal Public Defenders Offices in New Mexico, Texas and Arizona shared information about those programs with the Federal Defender Services organization throughout the country.  The results illustrate

that there is a wide disparity in treatment of offenders charged with illegal reentry under Section 1326.

Some prosecutors in some districts (NM, AZ (Tucson), the Southern and Central District of CA, and OR allow Section 1326 charges to be reduced to a violation of 8 U.S.C. 1325 (entry without inspection) which carries a maximum penalty of six months imprisonment for a first offense or up to 24 months imprisonment for a subsequent offense. In the Central District of California and the Western District of Washington for example, this so-called "super fast-track" program would allow a defendant to plead to two violations of Section 1325 for a total stipulated sentence of 30 months imprisonment (6 months on the first and 24 months on the second, sentences to run consecutively). Other jurisdictions allow a 2 level reduction in the offense level for Section 1326 violations with aggravated felony prior convictions (S.D. TX (Brownsville), S.D. TX (McAllen), NM, S.D. CA (San Diego), and Nebraska. In Arizona, a 3 level departure is available for a total offense level 24 Section 1326 case. A 4 level departure is available in the E.D. CA at the discretion of the U.S. Attorney. Other jurisdictions have variations of the above described dispositions, but suffice it to say that some U.S. Attorney's Offices throughout the country have widely varying policies as to the treatment of Section 1326 offenders.

Mr. CORTEZ contends that in the post-Booker atmosphere that he finds himself in, there is no principled reason why this court should adhere rigidly to the guideline range in sentencing him. The above results plainly demonstrate that the stated purpose of the federal sentencing guidelines, i.e., to eliminate arbitrary and inconsistent sentences for similarly situated defendants, is not being followed consistently across the country. Some U.S. Attorney's Offices have taken it upon themselves, by virtue of the authority granted by U.S.S.G. § 5K3.1, to grant some individuals 2, 3, or even the maximum, 4 level departures allowed. Some U.S. Attorney's Offices have disregarded

the spirit of 5K3.1 altogether and allow much more significant departures through charge bargaining.

Mr. CORTEZ submits that this court should feel free to impose a sentence below the guidelines that would meet the requirements of Section 3553(a).  In that regard, a sentence of 30 - 37 months would serve the ends of justice.  Other defendants who commit the same offense with even worse criminal history in Arizona will face a sentencing range of 30 - 37 months due to the availability of a 4 level fast track program. His current guideline range of 46 to 57 months cannot be justified by deterrence, since the overwhelming majority of defendants who commit this offense will be eligible for fast track.  Since he has only one criminal conviction which he committed more than seven years ago, and he decided to plead guilty on his first meeting with his attorney, he would be a good candidate for a fast track program.  Ironically, CORTEZ would be facing a lower sentencing range of 30- 37 months (criminal history III still) if he commits this same offense a second time immediately after completing his three years of supervised release but chooses to reside only within fast track eligible jurisdictions. Such encouraging of illegal aliens to remain in the state with the largest number of illegal aliens is not a good reason for a disparity.

The disparity created by the fast track program is completely unwarranted.  The purpose of the fast track is to ease the burden on the courts and staff caused by large numbers of cases.  However, in the Southwest a large number of attorneys, jail officials and probation officers speak Spanish thus making it easier to handle such cases in those regions than anywhere else.  The federal public defenders offices in Southern Arizona, Southern New Mexico and El Paso Texas all require their attorneys to be bilingual. Defendant notes that the burden on the courts caused by Spanish speaking defendants could be very large in this district which has no certified interpreters.

Other district courts have sentenced below the guidelines in re-entry cases to address sentencing disparity caused by the geographic limits of fast track programs. Judge Gerald Bruce Lee of the Eastern District of Virginia imposed a below the guidelines sentence in part based on the following findings based on statistics from the *Federal Justice Statistics Resource Center, Sentences Within and Departing from the U.S. Sentencing Guidelines for Immigration Offenses, by District, 2001, (*available at http://fjsrc.urban.org/noframe/dist/d2001/cat/s6_t7.pdf)*:*

> In the District of Arizona, where "fast track" treatment is available for immigration cases, in 2001 the average incarceration sentence for immigration offenses was 29.1 months. n3 Only 20.9% of immigration offenses in the District of Arizona were sentenced within the Guideline Range and 77.3% involved downward departures not related to substantial assistance. n4 During the same time period, in the Southern District of California, where the "fast track" program is also available, the average sentence for an immigration offense was 17.4 months, n5 with a 27.5% downward departure rate for grounds other than substantial assistance. n6 In the Southern District of California defendants subject to twenty-year statutory maximums and guideline ranges of 70-87 months are permitted under the "fast track" program to plead guilty to offenses with a two-year statutory maximum. *See Galvez-Barrios*, 355 F. Supp. 2d 958, slip. op. at 9 (*citing United States v. Banuelos-Rodriguez*, 215 F.3d 969 (9th Cir. 2000)). In New Mexico, where the "fast track" program is also available, the average sentence in 2001 for an immigration offense was 22.3 months, n7 with a downward departure rate of 53%. n8 In the Southern District of Texas, the average sentence for immigration offenses was 28.2 months, n9 with a 32.5% non-substantial assistance downward departure rate. *United States v. Ramirez-Ramirez*, 365 F. Supp. 2d 728 (E.D. Va. 2005).

Judge Adelman of the Eastern District of Wisconsin has also stated that "it may be appropriate in some cases for courts to exercise their discretion to minimize the sentencing disparity that fast-track programs create." *United States v. Galvez-Barrios*, 355 F.Supp. 2d 958, 963 (E.D. Wis. 2005).

        Respectfully submitted,

        RICHARD H. PARSONS,
        Chief Federal Public Defender,

By: s/ Douglas J. Beevers
        Douglas J. Beevers
        Assistant Federal Defender
        600 East Adams Street, 2nd Floor
        Springfield, Illinois 62701
        Telephone: (217) 492-5070
        Fax: (217) 492-5077
        E-mail: douglas_beevers@fd.org

## PROOF OF SERVICE

I hereby certify that on May 31, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

AUSA Patricia McInerney
Office of the United States Attorney
318 S. Sixth Street
Springfield, IL 62701

        By: s/ Douglas J. Beevers